### R. A. VAN HORN v. W. C. TEMPLETON and C. VANDERBILT—McCROSKY v. THE SAME—NEAL v. THE SAME.

Action of damages for non-performance of contract. Defendants agreed to convey plaintiffs from San Francisco to New Orleans, in about twenty-four days, connecting at San Juan, whence they were to be taken by the steamer Daniel Webster to New Orleans. The D. W. did not appear at San Juan for ten days after the arrival of plaintiffs. A violent storm at sea prevented the defendants from having a steamship at San Juan in time. *Held:* This was an inevitable accident and overpowering force, which exempted defendants from responsibility.

Any other steamship, equally fitted to transport passengers with comfort and safety as the D. W., would have been a compliance with the contract.

Defendants contracted that the only extra expense of passengers would be for their board in crossing the Isthmus; and that on their arrival at San Juan they should immediately go on board the steamer. After their arrival at San Juan they were not permitted to go on board the D. W. for about ten days. *Held:* That plaintiffs were entitled to recover their expenses for that length of time.

APPEAL from the Fifth District Court of New Orleans, *Augustin,* J.

*Rand & Bartlett,* for plaintiffs.     *Clack,* for defendants and appellants.

SPOFFORD, J.    These consolidated suits were brought against the owners of the Vanderbilt line of steamers by three passengers, who bought tickets of the defendants in San Francisco, for the purpose of being conveyed thence by the Nicaragua route to New Orleans.

They allege that they have suffered damages to the extent of $1000 each, through the fraud and negligence of the defendants, who failed and refused to comply with their contract in the following particulars—viz.: that they promised to transport the plaintiffs without delay to New Orleans, in the space of about twenty-four days, by means of a connection with their steamship the Daniel Webster, to be formed t; J an Juan del Norte, on the Atlantic side of the Isthmus of Nicaragua; whereas, on arriving at San Juan del Norte no steamer was there to make the connection, nor did any appear at that point until some ten days after the arrival of the plaintiffs, when the Daniel Webster made her appearance; but that their officers, the defendants' agents, refused to let the plaintiffs go on board until some thirteen days more had expired, when they were suffered to go on board, and were brought to New Orleans; that they were thus

delayed about three weeks upon the Isthmus of Nicaragua, at their own expense, in an unwholesome climate and at a sickly season, whereby they have suffered loss and damage, through the fault of the defendants, to the amounts claimed in their respective petitions.

The plaintiffs obtained a verdict from a jury for $350 each, and the defendants have appealed from judgments rendered in pursuance of the verdict.

Upon the pleadings and evidence, the case naturally gives rise to two distinct inquiries:

1. Are the defendants liable in damages for the failure to connect punctually at San Juan del Norte ?

2. Are they liable for refusing to allow the plaintiffs to go on board the Daniel Webster when she did arrive, and to remain on board until she sailed ?

The first question we are compelled to answer in the negative.

The tickets purchased by the plaintiffs, as well as the law of the contract, exempted the defendants from responsibility for inevitable accident and overpowering force. A violent storm at sea prevented the defendants from having a steamship at the port of San Juan del Norte in season to take those passengers for New Orleans, who, like the plaintiffs, had left San Francisco upon the steamer Brother Jonathan, with through tickets by the Nicaragua route. But the plaintiffs contend that although this is true, yet the defendants had first violated their contract by dispatching the steamship Pampero from New Orleans, instead of the Daniel Webster, to make the connection at the time referred to. In proof of this position, they cite the advertisements published by the defendants in San Francisco just before the sailing of the Brother Jonathan for San Juan del Sud, by which it appears that the Daniel Webster was named as the connecting ship for that voyage.

We do not think this constituted an essential or material part of the contract. Any other steamship equally fitted to transport passengers with comfort and safety would answer as well. The Pampero belonged to the same company, and was a staunch A No. 1 ship. *Non constat* but that, had the Daniel Webster encountered the same gale she too would have been obliged to put back and have equally disappointed the plaintiffs. The tickets bought by plaintiffs did not specify any particular ship as the promised conveyance from San Juan del Norte to New Orleans, but merely promised them a passage upon the steamer to connect with the one on which they left San Francisco. Nor does it appear that there was any bad faith on the part of the defendants' agents in San Francisco in advertising the Daniel Webster as the connecting steamer. They believed the representation to be true, and it was a mistake of a character not to affect the contract materially. The Pampero is shown to have been equally seaworthy, if her reputation was not quite so high as that of the Daniel Webster. And it does not appear that the defendants could have sent a steamship sooner to replace the Pampero, after the accident.

But upon the other branch of the case, we are of opinion that the strong representations made by the defendants that the only extra expense of the plaintiffs would be for their board whilst crossing the Isthmus of Nicaragua in the conveyances of the Accessory Transit Company, which connected the defendants' lines of steamers, and that they should immediately go on board the steamer at San Juan del Norte, make out a case of liability on the part of the defendants for refusing to take the plaintiffs on board the Daniel Webster after her arrival at the last-named port. There is no such evidence of a well-under-

VAN HORN
*v.*
TEMPLETON.

stood usage, or of notice to the plaintiffs of what would be done in such a contingency as will counteract the presumption that arises from the actual representations made to the plaintiffs when they bought their tickets.

The evidence shows that after the arrival of the Daniel Webster the plaintiffs were kept on shore at San Juan del Norte for about ten days, at an expense of $1 50 per day.

They are accordingly entitled to recover each the sum of $15 and costs.

It is therefore ordered that the judgment of the District Court be reversed, and proceeding to render such judgment as should have been rendered, it is ordered, adjudged and decreed, that each of the plaintiffs in these consolidated suits recover of the defendants, *in solido,* the sum of $15 and the costs of suit in the District Court; the costs of appeal to be paid by the plaintiffs and appellees respectively.