No. 164.—JOHN A. WILLIS *v.* LAURA J. WILLIS—JOSEPHINE NICHOLSON, Intervenor.

*A* judicial sale of real property, to satisfy a mortgage, extinguishes all the subsequent mortgages. Therefore, if the evidence and declarations of the parties show that the defendant was the real purchaser of the land at sheriff's sale, under the prior mortgage, the subsequent mortgages are extinguished.

APPEAL from Tenth Judicial District, parish of Caddo. . *Weems*, J. *T. T. & A. D. Land*, for plaintiff and appellant. *A. W. O. Hicks*, for defendant and appellee. *Wright & Duncan*, for intervenor.

TALIAFERRO, J. This suit is instituted upon two promissory notes, secured by mortgage on a tract of land sold by the plaintiff to the defendant. The plaintiff claims recognition and enforcement of the mortgage, and vendor's privilege upon the land, and that the proceeds be specially applied to the payment of the notes and all interest upon them. Each of these notes is for $1774 97, payable respectively on the first of January, 1861 and 1862, with eight per cent. interest from date.

The defendant does not deny her liability to pay the notes as a personal debt, but contends that the special mortgage granted by her to secure the payment of the notes has been extinguished by a judicial sale of the land. Josephine Nicholson, a daughter of the defendant, intervenes, claiming a tacit and judicial mortgage upon the land, arising from an indebtedness to her from the defendant, as tutrix to the intervenor during her minority.

A personal judgment was rendered in favor of the plaintiff, without privilege or mortgage as claimed, for $3549 95, with eight per cent. interest from the eighteenth of January, 1860.

The plaintiff alone appealed.

The plaintiff purchased the land he sold to the defendant from Oglesby & Paup, about a year before he conveyed it to the defendant. In his contract with the defendant, she obligated herself to pay his two notes of $1166 66 each, the balance due Oglesby & Paup for the price of the land, which was secured by mortgage on the land. The defendant paid one of these notes, but, failing to pay the other, a writ of seizure and sale was taken out, and the land seized and advertised for sale. At this juncture of affairs, the defendant applied to R. Nicholson to borrow money to pay the debt and save her land. Nicholson declined lending the money needed, but agreed that he would buy the land at the sheriff's sale and reconvey it to her, if she would reimburse the money by a given time. The defendant consented, and this arrangement was carried out. The defendant contends that the judicial sale of the land under the prior mortgage of Oglesby & Paup extinguished the subsequent mortgage, which the plaintiff is seeking to enforce. As this is the only question in this case, and the solution of which will decide the issue, it will be proper to refer to the testi-

mony which relates to the purchase at sheriff's sale, by Nicholson, and his subsequent transfer of the land to the defendant. On the one side it is held that, as Nicholson purchased the land and reconveyed it to the defendant, in pursuance of an agreement with her, the act was merely one of agency, or a purchase for the benefit of the defendant. On the other hand it is contended that the sale by the sheriff to Nicholson was absolute, and vested title in him. That he was not interposed, nor did he act as an agent, but bought with the intention of becoming owner. Nicholson was examined as a witness, and he testified that "Laura J. Willis applied to him for a loan of money to pay the mortgage notes she had assumed to pay in a sale from John A. Willis to herself. Informed her he could not let her have the money asked for, but offered to buy it in his own name, for himself, at the sheriff's sale, and offered to let Mrs. L. J. Willis have it back if she could refund the money in a certain time. Witness accordingly bought it at the sheriff's sale, and before the time was out she brought him the money, and he sold it back to her; this was a bargain between witness and L. J. Willis. If she brought him the money in a certain time, he was to let her have the land. The defendant was living on the land at the time of the sale, and continued to do so up to the time witness conveyed it back to her, and continued to live on the land until the spring of 1866. Witness refers to the sale made in the suit of Oglesby v. John A. Willis. Did not know whether Mrs. Willis could pay witness the money, and he therefore took the title to the land in his own name, in accordance with the bargain referred to." Cross examined, says : " He bought the land for himself, and not for the defendant, and did not act as her agent, and that there was no agreement made that the sale was for defendant; and he considered himself the absolute and unconditional owner of the land after the sheriff's sale to him." Re-examined, says: " He reconveyed the land to the defendant because it was the bargain he had made with her, if she paid him in a certain time. This was an agreement made before the sheriff's sale of the land." Recross examined, says: " The bargain or agreement thus made was not in writing."

There is a bill of exceptions in the record taken by the defendant, which the decision of the case does not require us to examine. The plaintiff's counsel refers to the case of Follain et al. v. Broussard, sheriff, et al., 9 Rob. 72, and relies much upon it as authority to sustain his position in the present case. The gist of the matter there was, whether Declouet bought for himself, and having so bought, afterwards conveyed to Fagot, or whether he bought for the latter under a previous agreement and understanding with him. The agreement that Declouet would reconvey if Fagot should pay the bond, was made after the sheriff's sale at which Declouet bought; and this, the counsel argues, makes the case before us a stronger one, because here the

agreement was previous to the sale. The court, however, uses this language, which lays down the true test:

"It is clear that the sheriff's sale to Declouet divested Fagot of title, and at the same time extinguished the mortgage of his vendors, N. and E. Lablanc, under which it was made, unless it appear that Fagot was in reality the purchaser at that sale, and bid in the property through Declouet, as a person interposed." Now, taking the entire evidence together in the case at bar, we can not understand it as supporting the belief that there was agency or interposition of any kind in the transaction. The statements of Nicholson under oath are clear and direct, that he did not buy as an agent; made no agreement that the sale was for defendant; considered himself absolute and unconditional owner of the land. These and other positive declarations of the witness, ignoring the hypothesis that Mrs. Willis, the defendant, was the real purchaser, through Nicholson, an interposed person, and no evidence contradicting, in any manner, those statements, we think they must be taken as showing an actual sale of the property to him, and, consequently, that the defendant was divested of title. We do not see that Nicholson's agreement to subsequently sell to defendant, on certain conditions, is inconsistent with the intent to buy for himself and become vested with perfect ownership.

It resulted, then, that the judicial sale of the property under the older mortgage extinguished the subsequent mortgages, and it passed to the purchaser free of the plaintiff's mortgage. The judgment of the court a qua was therefore correctly rendered for the debt, without recognition of mortgage or privilege.

It is therefore ordered, adjudged and decreed that the judgment of the district court be affirmed, with costs.