## CARITE v. TROTOT.

1. The seizure and sale under executory process, authorized by art. 732 of the Code of Practice of Louisiana, vest in the purchaser, as against the owner and subsequent incumbrancers, an absolute title to the mortgaged lands.

2. Such incumbrancers cannot set aside a conveyance by the creditor to the mortgagor's wife, made pursuant to his agreement with her; that should he purchase the lands when they were subjected to judicial sale, he would sell them to her.

3. "The separation of property obtained by the wife" is not rendered void by the omission to publish it pursuant to art. 2429 of the Civil Code, nor by the consent of the husband that the case might be tried, nor by the failure to issue execution on the judgment authorizing the separation, where the object of the suit was merely to put an end to the community and to secure to her and her children the right to her future earnings, he not being condemned to pay any money other than the costs.

4. Under art. 2425 of the Civil Code, his financial embarrassment is sufficient to authorize a judgment of separation of property in her favor.

5. The proper parish court had jurisdiction of such a suit, although it was not prosecuted for the recovery of money or money's worth.

APPEAL from the Circuit Court of the United States for the District of Louisiana.

The facts are stated in the opinion of the court.

*Mr. Thomas J. Semmes* for the appellants.

*Mr. Joseph P. Hornor* and *Mr. William S. Benedict* for the appellee.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is a bill in equity filed by Félicité Trotot, the appellee, to foreclose a mortgage and for the sale of the mortgaged property, consisting principally of a sugar plantation with its improvements, in Louisiana. The property originally belonged to Jean Baptiste Clement, a citizen of France, who, and also his agent and attorney in fact, Antoine C. Tremoulet, by whom he was represented in the transactions in question, are parties to the suit, and appellants, with Celestine Carite and her children. Clement, through Tremoulet, sold the property Sept. 22, 1869, to the firm of Copponex & Co., composed of Copponex, Moulor, and Carite, the husband of Celestine, for $55,000, of which $10,000 was paid in cash, $6,764 was an incumbrance in favor of the Citizens' Bank of Louisiana, assumed by the purchasers, and the remainder, evidenced by their four promissory notes for $9,559 each, payable respectively Sept. 1, 1870, 1871, 1872, and 1873, with interest at eight per cent per annum, amounting to $38,236, was secured by mortgage upon the premises.

On Jan. 11, 1871, Copponex sold his interest in the firm business and this property to his partners for $10,000 cash, they assuming the debts of the partnership; and on Dec. 30, 1872, Moulor sold his interest to Carite for $55,000, in addition to the assumption by the latter of the incumbrance in favor of the Citizens' Bank, amounting then to $5,573, and three unpaid notes of $9,559 each, with interest, still due to Tremoulet as agent for Clement. For the purchase-money, agreed to be paid to Moulor, Carite gave eleven promissory notes of $5,000 each, — three payable in one year from date, two in two years, two in three years, two in four years, and two in five years, — secured by mortgage upon the plantation.

The appellee claims to be the holder and owner of five of these notes, the first three and the second two, bearing interest at the rate of eight per cent per annum, and to have the right, they being overdue and unpaid, to foreclose the mortgage

given by Carite to Moulor, and sell the mortgaged premises for the payment of the amount due thereon. She also insists that her mortgage securing the debt is the first and best lien upon the premises, except what may still appear to be due to the Citizens' Bank.

As the grounds of this priority, the bill alleges that on Feb. 10, 1873, Casimir Carite, conspiring with his wife, Celestine, Carite, and Tremoulet, induced the latter to institute, in the Circuit Court of the United States for the District of Louisiana, proceedings, by executory process, in the name of Clement, upon the mortgage and notes given by Copponex & Co., for the seizure and sale of the premises, and caused them to be sold to Tremoulet for a price less than the amount due to the Citizens' Bank, and the amount claimed to be due to Clement, and the title was conveyed to him accordingly; that the proceedings and sale were simulated and fraudulent, the possession of Casimir Carite not being disturbed thereby, and the object being to defraud the appellee and his other creditors; and that, in point of fact, the debt originally due from Copponex & Co. to Clement, secured by the mortgage to the latter, was, at the date of said proceedings and sale, paid and extinguished; that, in further prosecution of the same conspiracy and fraud, Casimir Carite induced and caused his wife, on Feb. 13, 1873, to file a petition in the Parish Court of St. James, in Louisiana, representing that she was married to him April 23, 1863, and that there existed between them a community of acquests and gains, which allegations, it is admitted, were true, but further setting forth that he had become hopelessly involved in debt, which, it is alleged, was false, and prayed for a judgment of separation of property from him; that a pretended defence was made by him to the petition, on which judgment was rendered in her favor, separating her in property from him, and dissolving the community of acquests and gains theretofore existing between them; that this proceeding was fraudulent and void, because it was voluntary and by consent, because the wife had no claim against him and alleged none, and assigned no reason in law why such separation should be decreed, because there was no derangement of his affairs, and no allegation that his wife could conduct the business of the plantation better

than he, the latter in point of fact having conducted the same after the decree, as before; and because said judgment was never published as required by law, nor ever executed in any manner by the issue of any writ; that, in further pursuance of said conspiracy and fraud, Tremoulet, on May 22, 1873, pretending to act as his agent, made to Celestine Carite a pretended sale of the said plantation and property for a sum sufficient to cover the amount alleged to be due to Clement, although that debt, or a large part of it, had previously been satisfied and extinguished.

The prayer of the bill is that the proceedings under which Tremoulet purchased the premises for Clement, the decree of separation of property from her husband on behalf of Mrs. Carite, and the sale and conveyance to her of the plantation by Clement, be adjudged to be void and be set aside, and that the complainant's mortgage and debt be charged as the first lien on the same, and be satisfied by a sale thereof for that purpose.

The final decree of the Circuit Court is substantially in accordance with the prayer of the bill, declaring that the sale to Tremoulet for Clement, and by him to Celestine Carite, be set aside and annulled as simulated and illegal; that the judgment of separation of property between her and her husband is null and void for want of publication; that the plantation and property be recognized as belonging to the community formerly subsisting between Carite and his wife, as it did before said simulated sales were made; and that the complainant had established the mortgage under which she claims, as a valid and subsisting lien upon the property to secure the sum of $25,000, with interest at the rate of eight per cent per annum from Dec. 30, 1872, for which, if not paid within sixty days, it was ordered that the premises be sold.

The object of this appeal is to review that decree.

The first question it presents relates to the validity and effect of the judicial proceedings taken by Tremoulet, which resulted in the sale of the property to Clement.

Against its validity it is asserted in the bill that the debt to Clement, at the time of the sale, had been extinguished, and that the proceeding, therefore, was a mere pretext and cover for an intended fraud. But the evidence leaves no doubt that

this was an unfounded suspicion.   It is abundantly established by the proof that, at the time of the sale, there was still due on account of the debt to the Citizens' Bank, assumed by Carite, $5,573, and that two of the notes for $9,559 each, on one of which interest had been running from Jan. 15, 1873, and on the other from its date, Sept. 1, 1869, were overdue and unpaid; and that another note of the same series, and of the same amount, falling due Sept. 1, 1873, was held by Tremoulet for Clement, the whole amounting to $34,395.40.

The proceeding itself, though summary, was familiar in practice in such cases, and strictly according to the law of Louisiana, and if not voidable on other grounds, had the effect to vest in Clement an absolute title to the property, free of all subsequent incumbrances.   It was executory process which is authorized (Code of Practice, art. 732) " when the creditor's right arises from an act importing a confession of judgment, and which contains a privilege or mortgage in his favor; " which is the case (art. 733) " when it is passed before a notary public, or other officer fulfilling the same functions, in the presence of two witnesses, and the debtor has declared or acknowledged the debt for which he gives the privilege or mortgage.".   By art. 3360, Civil Code, it is declared " that the debtor cannot sell, engage, or mortgage the same property to other persons, to the prejudice of the mortgage which is already acquired to another creditor; " so that the seizure and sale, by virtue of executory process under a mortgage, are not affected by the existence of subsequent mortgages, the owners of which are not made parties to the proceeding.   The security of the latter, in that event, is transferred to the proceeds of the sale, and their protection consists in the requirement that no sale shall take place for less than two-thirds of the value of the mortgaged property, as appraised for that purpose.   This effect is expressly declared by Code of Practice, arts. 707, 708.  *Hart v. Foley*, 1 Rob. (La.) 378.   It follows, therefore, that unless the judicial sale to Clement is a nullity, the mortgage lien of the appellee is itself extinct, though the mortgage debt will survive as a personal obligation.

It is contended, however, by the appellee, that this sale to Clement was void, as a fraud upon her rights as a creditor of

Carite, because taken in connection with the subsequent sale to Mrs. Carite, it was intended to defeat the claims of the creditors of her husband, and to place this property beyond their reach.

The circumstances attending the transaction are these: Carite was undoubtedly insolvent. Two of the notes, held by Tremoulet for Clement, had become due, and remained unpaid. He was in arrears on account of interest. He was embarrassed by other debts, for which he was pressed, so as seriously to threaten the uninterrupted prosecution of the business of the plantation. The notes were placed by Tremoulet in the hands of an attorney for collection. The necessary formal preliminary demand of payment was made. A negotiation for an extension of time was begun by Carite, who suggested that he could make such an arrangement with all his creditors. Tremoulet told Carite that he had no desire to acquire the property, as he represented Clement, who resided in France, and who did not wish a sugar plantation, and would not know what to do with one if he had it; but that he would feel obliged to act upon the matured notes if the consequence of non-action was to be the seizure of the mortgaged property by other creditors and the consequent diminution of the security. The upshot was his promise to abstain from a seizure under the mortgage until Carite should have time to arrange with his creditors, provided no seizure was made by other parties.

What efforts Carite made to obtain from other creditors the desired indulgence do not appear, but if any were made they did not succeed. On Feb. 7, 1873, Tremoulet, in a letter to Clement, reported that, by an arrangement with Carite, the latter would make no objection to the sale and seizure of the immovables, and would rather facilitate the execution thereof, on condition that Tremoulet would oblige himself, buying them in Clement's name, to resell the same to his wife, from whom he was separated in property, at a price that would cover all that was due to Clement, including interest, costs, and attorney's fees, provided that nobody should put in a higher bid than that amount, the accrued interest to be paid in cash. The terms, he added, were not then fixed, but might be soon, and said that he should not be too exacting, knowing that

Carite continues the plantation at his own expense, that every-thing predicted a good crop, and notwithstanding the deprecia-tion in the value of real estate, the plantation was adequate security for the mortgage to Clement.

On Feb. 10, 1873, Neal and McIntyre, citizens of Kentucky, commenced a proceeding in the Circuit Court for the sequestra-tion of ten mules on the plantation, on which they as vendors claimed to have a lien and privilege for the unpaid purchase-money, amounting to $2,150, and a writ was accordingly issued to the marshal, requiring him to seize and take possession of them.

On the same day, in consequence of this proceeding, Tre-moulet caused executory process to issue in behalf of Clement, and seized the mortgaged property, including the mules sought to be subjected by Neal and McIntyre, which he claimed were subject to the Clement mortgage, because they had become immovables by destination. The plantation and property were taken into possession by the marshal, though Carite was per-mitted to remain for the purpose of attending to the growing crop, and were advertised for sale. Mr. Edward D. White, Tremoulet's attorney, testified as follows:—

"During the seizure and before the sale quite a number of the creditors of Mulor, Copponex, & Co. and Carite called on me. To all of them I stated exactly what had been said to Carite; that is, that the seizure of the property had been pro-voked by the threatened removal of the immovables by destina-tion; that the property was not desired by the plaintiff; that he had no intention of bidding on it beyond the amount of his claim, with costs and charges; that Carite had been told if he could successfully arrange with his creditors, indulgence would be given and proceedings stopped."

On March 3, Tremoulet reported by letter to Clement the fact of seizure and that the property was advertised for sale, saying: "I am waiting for Mr. Carite to make our arrangements for the sale that I shall make to his wife." The sale was had on April 5, and on April 10 Tremoulet reported that fact by letter to his principal, saying: "In case the plantation would have brought wherewith to cover your debt, capital and inter-est, it was understood that I would not buy the same in, but

would receive the amount due you. . . . Now, I am awaiting Mr. Carite to sell the plantation back to his wife on the terms agreed upon. It is well understood that you shall have to bear no costs, the sale having been made only for the purpose of relieving the plantation from the embarrassments in which Moulor had placed it." He then proceeds to explain the reasons for the resale as proposed, and said : "Another important reason is, that I could not do you justice in charging myself with the administration of this property at the distance where I am. . . . In one word, I preferred in your own interest to resell the plantation, taking all possible precautions, rather than to work the same for your account, notwithstanding the fine prospect of the present crop." On May 26 he reports the conclusion of his negotiations with Mrs. Carite and the resale to her, giving the details of the purchase. He says : "I have been obliged to accept from Mrs. Carite a smaller amount than the amount agreed upon in order to make the sale of the immovables, and this in your interest ; it was preferable to accept these terms than to keep the plantation and work the same for your account, at the present price of labor. In case I should have refused to effect an understanding with Mrs. Carite, I would not have found a purchaser that would have taken the plantation on the same terms."

We see nothing in the circumstances of the case as disclosed in this record to impeach the good faith, or affect the validity, of this transaction. Clement had the unquestionable right to subject to judicial sale the property, held as security for his debt, and become its purchaser at two-thirds of its appraised value. No one was wronged by such a procedure, although it had the effect to disappoint every other creditor. The sale was open and public, and there is no suggestion of any attempt to prevent the property from bringing the best price. Every subsequent incumbrancer had the right and the opportunity to bid upon it, and, if he chose, to buy it for himself. If he neglected or declined to do so, it must be assumed that he made his decision in the pursuit of his own interests. The title acquired by Clement was indefeasible and absolute. No right of redemption remained, and it was subject to no trust. He could

dispose of it at his own will. If he chose so to do, he was entirely free to convey it, on any consideration he approved, to Mrs. Carite ; as much so, if she was legally capable of receiving title, as to any other person. And what he could lawfully do with the property, after it had become his own, he could agree to do in advance. In all this there is nothing whatever that touches the right of any creditor of Carite. It is a lawful end, pursued by lawful means; and if, by reason of it, others have sustained any loss, it is because the property was not sufficient to pay all for which it had been pledged, or because those interested in the security voluntarily sacrificed their own interests. In neither event is there ground for complaint. The course of Tremoulet seems to have been dictated, as it was justified, by a wise regard to the interests of his absent principal. It was a mere measure of self-protection, to disembarrass the property of debt, to protect it against disorganization and waste, justly apprehended as the result of seizures by subsequent mortgagees and lien-holders, or which might have occurred, if Carite, driven to that necessity, had surrendered it to the delays and expenses of administration and sale, in a court of bankruptcy. We cannot perceive, in the acquisition and disposition of the title by Clement, either an intention or a tendency to impede or defeat the just rights of the appellee, or any other creditor of Carite.

It is further contended, however, that the decree of separation of property between Carite and his wife is void ; that she having no capacity, therefore, to receive and hold the title to this plantation as separate property, it inured to the community as before, and was replaced subject to the previously existing liens in their order. It is not conceded that this consequence would result if it should be adjudged that the community had not been interrupted, for it is claimed that the sale to Clement having necessarily destroyed the lien of all subsequent incumbrances, a conveyance to Carite himself, although it would have made the property liable to the pre-existing debts of the community, it could be subjected only by process, open to general creditors by means of judgment and levy under execution. However this may be, we proceed to examine the grounds on which it is urged that the decree of separation of

property rendered on the petition of Mrs. Carite should be annulled.

The first of these, and the one on which the Circuit Court based its decree, is that the judgment was never advertised, in violation of art. 2429, Civil Code, which provides that "the separation of property obtained by the wife must be published three times in the public newspapers at the farthest within three months after the judgment which ordered the same."

The fact that no such publication was made is not denied, but its omission, it is insisted, does not avoid the judgment. And such is the construction put upon this article by the Supreme Court of Louisiana. In *Turnbull* v. *Davis* (1 Mart. (La.) N. S. 568), that court said : " It is true that by law publication of a separation of property between husband and wife is expressly required ; but the pain of nullity is not denounced against a neglect of such publication. It is not a prohibitive regulation, which might, in some instances, imply nullity. We are, therefore, of opinion that a judgment of separation, unattended by publication, is not *ipso facto* void; but if such laches afford any ground for annulling and declaring it inefficient, it can only be decreed on showing fraud and injury to third parties as a consequence of omitting the publication. In the present case there is no positive testimony that the defendants have suffered injury, resulting from the neglect to publish the decree of separation ; nor can such injury be legally presumed from the whole tenor of the evidence."

The authority of this case was recognized and the decision followed in *Raiford* v. *Thorn*, 15 La. Ann. 81, decided in 1860.

We have examined *Spires* v. *McKelvy* (23 id. 571), *Levistones* v. *Brady* (11 id. 696), *Bostwick* v. *Gasquet* (11 La. 534), and *Heyman* v. *The Sheriff, &c.* (27 La. Ann. 193), to which we have been referred by counsel for the appellee, and do not find in them anything which overrules the decisions cited above, or that is inconsistent with them.

It is next objected that the judgment of separation of property is null, because, in violation of art. 2428, Civil Code, it was not executed. That article reads as follows : " The separation of property, although decreed by a court of justice, is null if it has not been executed by the payment of the rights

and claims of the wife, made to appear by an authentic act, as far as the estate of the husband can reach them, or at least by a *bona fide* non-interrupted suit to obtain payment."

It will be observed that the language of this article differs from that of art. 2429, just considered, in expressly denouncing nullity as a consequence of non-compliance with its requirements. But the nature of the execution must have relation to the nature of the judgment, and the terms of the article manifestly refer to cases where the judgment involves the transfer of property or the payment of money, and not the mere question of the future status of the wife, and her right, independent of her husband, separately to acquire property in her own right. This is the view taken by the Supreme Court of Louisiana in the case of *Jones* v. *Morgan* (6 La. Ann. 630), in which it is said that " the article of the code requiring execution to issue within a limited time after the decree of separation, under a pain of nullity, is only applicable to cases in which there is a judgment against the husband for a sum of money. This precaution is, no doubt, intended for the protection of those with whom the husband is in the habit of dealing. But, in this case, the object of the action was not to recover moneys of the wife; it was simply to put an end to the community and then to secure to the wife and her children the future earnings she might derive from her untiring industry."

In such a case the intent and effect of the judgment are merely to confer upon the wife, in respect to her future acquisitions, the fruits of her own industry, and the savings of her own economy, the right to act separately from her husband, as though she were sole; and the right becomes fixed and vested by its actual exercise. *Holmes* v. *Barbin,* 13 La. Ann. 474.

This is what is meant by what the Supreme Court of Louisiana say in *Muse* v. *Yarborough* (11 La. 530), that " it is not the mere judgment of separation which renders the parties separate of property. The judgment recognizes the necessity for separation and judicially authorizes it; but if not followed by a *bona fide* execution, it produces no effects, even between the parties."

It is only when the judgment of separation of property is founded on a cause, which results in the establishment of some

claim against the husband's estate susceptible of execution, by some authentic act, or by judicial process to enforce it, that a neglect or failure to insist upon its execution is deemed conclusive evidence that it is the intention of the parties not to dissolve the community. The law in such cases for the protection of creditors, otherwise liable to be misled, annuls the unexecuted judgment of separation. *Handy* v. *Sterling*, 1 La. Ann. 308; *Longino* v. *Blackstone*, 4 id. 513; *Succession of Hearing*, 28 id. 149.

The costs of the suit, which Carite was condemned to pay, can hardly be considered any part of the judgment of separation of property, of which execution is required, and hence the failure to attempt their collection cannot affect its validity. In all other respects his wife assumed and exercised the right conferred upon her by the judgment, dissolving the community between him and her, by the very transaction in question, acquiring by purchase the title, of a plantation, which she has since administered, not less in his lifetime than since his death, so far as the record discloses, in her own name and right, and has thus, in the meaning of the law, executed the judgment of separation.

It is next objected that this judgment is void for want of any legal ground to justify it. The grounds on which it was prayed for, in the wife's petition, are thus stated: —

"Petitioner further represents that, owing to a series of crushing misfortunes, her husband, who was heretofore possessed of considerable means and property, has lately become hopelessly involved in debt, for the satisfaction of which all his property is now being attached, seized, and disposed of by his numerous creditors. That all of her husband's property will not be sufficient to pay and satisfy the enormous debt which is due by him. That, in consequence of the above-recited circumstances, petitioner fears and believes that the earnings of her separate industry may be seized by her husband's creditors, and thus be lost to herself and children; for which reasons petitioner is desirous of being separated in property from her said husband."

This petition was filed Feb. 13, 1873. This was after the writ of sequestration issued by Neal and McIntyre had been

executed, and after the seizure made by Tremoulet under his executory process in behalf of Clement.

Article 2425, Civil Code, which it is alleged regulates this proceeding, reads as follows : " The wife may, during the marriage, petition against the husband for a separation of property, whenever her dowry is in danger, owing to the mismanagement of her husband or otherwise, or when the disorder of his affairs induces her to believe that his estate may not be sufficient to meet her rights and claims.".

An authoritative construction of this article is found in *Wolf* v. *Lowry*, 10 La. Ann. 272. The court there say : " In *Davock* v. *Darcy* (6 Rob. 342), it was held that the right of the wife to a separation of property was not limited to the cases mentioned in art. 2399 (now 2425) of the code, and that she might obtain a separation of property when the habits and circumstances of her husband rendered it necessary to preserve for her family the earnings from her industry or talents. The same question was afterwards decided in the case of *Penn* v. *Crockett* (7 Ann. 343), when the right of the wife, which had been made the basis of the action of separation of property, was the value of a slave which had been given to the wife during marriage, and had been alienated by the husband. The court reaffirmed the former decision and held that, in case of the derangement of the husband's affairs, this was sufficient to authorize a judgment of separation of property in favor of the wife. After these repeated decisions we must consider the law as settled, the question being one of the construction of statutory laws, involving no fundamental principles."

This doctrine, that a claim for money or property on the part of the wife is not necessary to support a judgment of separation, was reaffirmed in *Mock* v. *Kennedy* (11 La. Ann. 525), where the court say : " It is sufficient for a married woman to prove that she had the skill and industry to earn a separate livelihood, which she had exercised, whether as a seamstress, teacher, milliner, or (as in the case at the bar) a shopkeeper, is not material ; she is entitled, under the humane spirit of our jurisprudence, upon proof of this fact, accompanied by proof of the insolvent condition of her husband's affairs, to call upon the court, by a judgment of separation, to protect the

fruits and earnings of her separate industry from being squandered by her husband or seized by his creditors."

In *Webb* v. *Bell* (24 La. Ann. 75), a judgment of separation, on appeal, was affirmed, notwithstanding the petition of the wife was opposed by the husband, on the ground that there was neither allegation nor proof that the plaintiff had, at the time of the institution of the suit, a separate trade or industry of any kind from which she was deriving revenue or means inuring to her own benefit. The sole ground of the judgment was the embarrassed circumstances of the husband's affairs. The court said: " The purpose sought by separation of property and dissolution of community in this case seems to be to enable the wife, by the use of her own limited means and those she might obtain through her relatives, to earn for herself and child a support, without having her earnings fall into the community."

The same point was expressly decided in *Meyer* v. *Smith & Co.* (id. 153), where the only allegation in the petition, on which the judgment was based, was that, " owing to the insolvency of her husband, it becomes necessary for the preservation of her acquisitions, the education, maintenance, and support of herself and family, that a dissolution of the community, &c., be decreed."

It is also objected to the judgment of separation that it was by consent, and, therefore, null, as equivalent to a voluntary separation, made void by art. 2427, Civil Code, and that it is not supported by evidence.

Both these objections are met by the case of *Powlis* v. *Cook*, 28 id. 546. In that case, as in this, the husband consented that the case might be fixed and tried, but, as the court then said, " that did not make it a consent judgment." And as to the proof of the husband's insolvency, the court then say, what may be adopted here, it " is manifest from this litigation, if not otherwise shown."

It is also urged that the parish court had no jurisdiction to entertain a suit for separation of property. No adjudication to this effect by the Supreme Court of Louisiana is referred to by counsel; while, on the contrary, it is tacitly assumed to exist, in the case of *Willis* v. *Ward*, 30 id. 1282. Art. 87 of

of the Constitution of the State, of 1868, then in force, prescribes that parish courts " shall have exclusive jurisdiction in original suits in all cases where the amount in dispute exceeds one hundred dollars and does not exceed five hundred dollars." The only limitation of the jurisdiction is as to the amount of money involved in the controversy; and has no relation to the question, where the suit is not prosecuted for the recovery of money or money's worth.

It is finally urged that the property in controversy belongs to the community, notwithstanding the judgment of separation. But on the admission of the validity of the sale to Clement, and of the judgment of separation of property, it is impossible to maintain this position; for, on that supposition, Clement had the right to dispose of the title to Mrs. Carite, precisely as to any other person capable of purchasing. The sale was made on credit, except as to the small sum of $1,243.73, and it does not help the contention of the counsel for the appellee on this point to admit what he says " that every cent that Mrs. Carite has paid on account of the purchase of the plantation was simply a part of the profits of the plantation itself; " because it is not claimed that any portion of those profits accrued prior to the time when all the interest which Carite, or any of his creditors, subsequent in right to Clement, ever had in the property, had been divested by the sale to him. Consequently it is fully shown that the community had no claim to any of the consideration paid by her for her purchase.

Upon these grounds the Circuit Court should have dismissed the bill of the appellee for want of equity, and for this error the decree will be reversed, and the cause remanded with directions to render a decree dismissing the bill; and it is

*So ordered.*