(54 South. 24.)

No. 18,331.

HEINSS et al. v. HENRY et al.

(Jan. 3, 1911.  Rehearing Denied Jan. 30, 1911.)

*(Syllabus by the Court.)*

1. MORTGAGES (§ 535*)—SALE UNDER FIRST MORTGAGE — EXTINGUISHMENT OF SUBSEQUENT MORTGAGES.

A judicial sale under a first mortgage extinguishes and cancels all subsequent mortgages and privileges where no surplus of the price remains for distribution.  In such a case the debts secured by inferior privilege and mortgage become mere ordinary claims.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1556; Dec. Dig. § 535.*]

2. HOMESTEAD (§ 96*)—EXEMPTION—DEBT FOR PURCHASE PRICE—"PURCHASE PRICE."

The exception of debts for "the purchase price of property" from homestead exemption under article 245 of the Constitution does not include a debt resulting from a former sale of the same property to the defendant in a case where he was evicted by the foreclosure of a prior mortgage, and afterwards acquired a new title to the property.

[Ed. Note.—For other cases, see Homestead, Cent. Dig §§ 147–153; Dec. Dig. § 96.*

For other definitions, see Words and Phrases, vol. 7, pp. 5857, 5858.]

3. MORTGAGES (§ 516*)—FORECLOSURE SALE—RIGHTS OF PURCHASER.

When a purchaser at sheriff's sale buys for himself and pays the price out of his own money, he is not a person interposed, although he may have agreed to sell to the defendant in execution.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1518; Dec. Dig. § 516.*]

Appeal from Eighteenth Judicial District Court, Parish of Acadia; William Campbell, Judge.

Action by Charles F. Heinss and others against John Henry and others. Judgment for plaintiffs, and defendants appeal. Amended and affirmed.

Smith & Carmouche, for appellants. Chappuis & Holt, for appellees.

LAND, J. Plaintiffs sued to recover certain sums representing the balance of the purchase price of certain real estate sold by them to the defendant, John Henry, with recognition and enforcement of their vendor's privilege and special mortgage.

The petition represents that as a part of the consideration of the sale the said John Henry assumed the payment of a certain note for $300 previously executed by petitioners, and secured by special mortgage on said property, that said John Henry failed to pay said note or any part thereof, and that said mortgage was foreclosed, and the property was adjudicated to Dr. F. R. Martin for the said John Henry, in accordance with an agreement previously entered into between them, but that the property was transferred by said Martin to Onezia Norbert, wife of the said John Henry, and fell into and still forms a part of the community existing between said husband and wife.

The defendant John Henry answered, pleading the general issue, and specially denying that Dr. Martin purchased the property for him, or that there was any understanding or agreement to the effect between them. The defendant further averred that his wife purchased from Dr. Martin in good faith and with her separate funds administered by her, and pleaded that the vendor's privilege and special mortgage claimed by the plaintiffs, if they ever existed, had been extinguished by the judicial sale to Dr. Martin. Defendant, further answering, pleaded, in the alternative, that the property was his homestead, and as such was exempt from execution.

Onezia Norbert filed a similar answer, in which she claimed the ownership of the property.

There was judgment in favor of the plaintiffs, and the defendants have appealed.

There is no dispute as to the facts, except as to the character of the purchase of the property at sheriff sale by Dr. Martin; that is to say, whether said purchase was made for John Henry. Dr. Martin purchased the property for $525 cash, and some days later sold the same to Onezia Norbert for the purported consideration of $577.50 cash, but in fact received four mortgage notes, two the separate property of John Henry, and two the separate property of Onezia Norbert, all four aggregating $1,400 of principal, with accrued interest.

John Henry, an old ignorant negro, was called as a witness by the plaintiffs. His testimony is somewhat confused, but on the whole does not prove that Dr. Martin purchased or agreed to purchase the property for him.

Dr. Martin's testimony is very clear and positive that he purchased for himself, with a view of making money out of the transaction by a resale of the property. John Henry had no means to buy or to reimburse Dr. Martin, and it is unreasonable to suppose that the latter agreed to buy, or bought, the property for John Henry. Even if Dr. Martin had agreed to sell to John Henry in the event he purchased, such an agreement would have been perfectly legitimate. Carite v. Trotot, 105 U. S. 751, 26 L. Ed. 1223; Willis v. Willis, 22 La. Ann. 447.

The foreclosure sale at which Dr. Martin purchased operated as a release of all subsequent privileges and mortgages on the property. Code Prac. arts. 707, 708. In Follain v. Broussard, 9 Rob. 72, where the purchaser at a foreclosure sale shortly thereafter sold the property to the original vendee, it was held that the sheriff's sale divested the vendee of his title, and extinguished the mortgage of his vendors, unless it be proved that the vendee was the real purchaser and bid

in the property through the nominal purchaser. See, also, Willis v. Willis, supra, to the same effect.

The authorities cited by counsel for plaintiffs have no application to the facts of this case. In most of them the owner and mortgagor purchased at tax sales, and in others there was bad faith on the part of the purchaser.

In the case at bar the prior mortgage was foreclosed against the plaintiffs, and the property was purchased by a third person. The deed to Henry was held in escrow for nearly 11 months, awaiting the payment of the cash portion of the price, and was recorded nearly a month after the institution of the foreclosure suit. While this deed acknowledged the receipt of $300, the cash portion of the price, as a matter of fact only $50 thereof was actually paid. Plaintiffs are now suing for $250, the remainder of the cash portion.

It further appears that in the act of sales to John Henry he assumed the payment of the prior mortgage for $300, with interest from the date of his purchase, and the deed recited that the interest up to said date had been paid. As a matter of fact no interest on the note had been paid and the property was sold to satisfy four years' interest, and attorney fees thereon, that the purchaser had not assumed. The property was sold at public outcry for $525.

Dr. Martin sold and intended to sell the property to John Henry's wife, who paid about one-half of the price out of her separate estate. The other half was paid out of John Henry's separate estate. The payments were made in mortgage notes, aggregating $1,400 in amount, which were taken for $577.50, the purchase price as recited in the act of sale.

Dr. Martin acquired a good title to the property free of all mortgages and privileges.

It is, however, contended by counsel for plaintiffs that the debt sued for represents the "purchase price" of the property, against which the homestead exemption cannot be pleaded under article 245 of the Constitution of 1898; and cite Baker v. Frellsen, 32 La. Ann. 829. That case is sui generis, and the reasoning on the rehearing is based on a judgment for the price, with recognition of mortgage, but not of vendor's privilege as prayed for by the plaintiff. Applying the rule of res judicata, the court held that a debt for the purchase price may exist without a vendor's privilege, and may be enforced against a homestead. In that case the purchase price was due to the immediate vendor of the party urging the homestead exemption. Of course, the Baker Case is no authority for the proposition that the term "purchase price" as used in article 245 of the Constitution means other than the money stipulated to be paid by the purchaser for the property. In the case at bar the purchase price was paid to Dr. Martin by the defendant husband and wife, who are now claiming the benefit of the homestead exemption. The ordinary claim of the plaintiffs growing out of the previous purchase by the husband contributed nothing to the acquisition of the property. The exception of the purchase price of property, movable and immovable, from the homestead exemption, rests on the equitable principle that a purchaser should not be permitted to retain both the property and the price. The exception of money, labor, and material furnished for building, repairing, and improving the homestead rests on the same principle. It therefore follows that the term "purchase price" as used in article 245 of the Constitution of 1898 means the debt incurred for the acquisition of the property.

It is therefore ordered that the judgment below be amended by rejecting plaintiffs' demand for the recognition and enforcement of

vendor's privilege and special mortgage on the tract of land described in the petition, and by maintaining defendants' plea of homestead exemption, and that as thus amended said judgment be affirmed, plaintiffs to pay costs of appeal.