## Ex-Parte John O'Donovan.

1. The statute of 1885, (chapter 3603,) providing for the appointment of County Boards of Health, and defining their powers, does not repeal the act of 1879 (chapter 3162), providing a uniform system of quarantine in this State. These statutes are *in pari materia*, and to be construed together.

2. In authorizing a County Board of Health to establish quarantines and to appoint a Port Inspector, the act of 1885 means quarantine as defined and authorized by the act of 1879, and a Port Inspector with the powers and duties prescribed by the latter act.

3. Neither of the above acts establishes of itself a quarantine at any place or in any county, but they leave it to the boards of health to establish the same when, in their judgment, it is expedient for the public welfare to do so.

4. The quarantine regulations which the act of 1885 authorizes a board of health to make are not operative, nor to be obeyed as such, except during the existence of a quarantine duly established by a board of health in accordance with the above statutes, and wherever either statute has regulated any matter of quarantine, any regulation inconsistent therewith, made by a board of health, is of no effect.

5. The regulation of the Board of Health of Escambia county, involved in this case, held to be invalid for the reason that as presented by the record it purports to be operative notwithstanding the absence of the establishment of quarantine by such board, and also because it assumes to regulate, in a different manner from the act of 1879, the detention of vessels in the matter of their examination as to whether they are subject to quarantine.

Writ of error to the Circuit Court for Escambia county.

On the 13th day of December last, R. C. White made affidavit before the County Judge of Escambia county that on the 5th day of the same month the plaintiff in error violated the following rule and regulation of the board of health of that county, viz: That the Port Inspector shall visit and inspect every vessel entering the Bay of Pensaco-

la, and ascertain and report her sanitary condition, and until such inspection and report, and the release of such vessel by such officer, no person shall visit her, and no person from her shall visit any other vessel or the shore after such rule has been *printed* ten days in a newspaper printed in said county, by visiting and going on board the vessel called the Clyde, lately entering the bay and port of Pensacola before the inspection and release of said vessel by the Port Inspector appointed by the Board of Health of said county.

The plaintiff in error was arrested under a warrant issued on such affidavit, and the County Judge having examined the witnesses and inquired into the charge, and determined that there was just reason to believe that the plaintiff in error was guilty of the offence, and having decided that the latter should enter into a recognizance in the sum of $200, with sufficient surety for his appearance at the next term of the Criminal Court of Record of Escambia county, and the plaintiff in error having failed to enter into such recognizance, the County Judge committed him to jail until he should give such recognizance or be therein discharged by due course of law.

The plaintiff in error then presented his petition to the Judge of the First Circuit for a writ of habeas corpus. To this petition is annexed as part thereof a copy of the affidavit, warrant and commitment spoken of. It also states the evidence on which the commitment was based to be as follows: That on the same 5th day of December plaintiff in error was an Inspector of Customs of the United States for the District of Pensacola, and that on that day about $4\frac{1}{2}$ P. M. he was ordered by his superior officer, the Chief Inspector at Pensacola, to board the vessel mentioned for the purpose of seeing her manifest, she then being known by plaintiff in error to be direct from Port Eads, and then being at anchor in the anchorage off the city of Pensacola. That pe-

titioner on his way to said vessel, followed in the rear of the boat of the Inspector of the Board of Health of Escambia county, the said White, but that before arriving at said vessel the said Inspector, White, caused his boat to return to the wharf and did not visit the vessel that afternoon. That plaintiff in error, in the performance of his duty as an Inspector of Customs, in pursuance of the act of Congress prescribing his duties, continued out to said vessel and boarded her before White had done so. The said rule and regulation of the Escambia County Board of Health had been printed ten days before said 5th day of December in a newspaper printed in said county. That such rule was never enacted as a law by the Legislature of Florida, but was adopted and promulgated under and by virtue of said section 10 of chapter 3603 or board of health statute. The statements of the petitioner are admitted to be substantially correct.

The writ of habeas corpus having issued the Sheriff made return thereto that he held plaintiff in error in custody by virtue of the said commitment issued by the County Judge. This return the plaintiff in error moved to quash.

The motion was denied, and the plaintiff in error remanded to the custody of the Sheriff.

*Mallory & Maxwell* for Plaintiff in Error.

MR. JUSTICE RANEY delivered the opinion of the court:

On the 11th day of March, 1879, a statute, chapter 3162, entitled "An act to provide a Uniform System of Quarantine in this State," received the approval of the Governor. In view of its provisions and the express repeal by it of the statute formerly controlling the same subject, we need not refer to prior legislation in considering the case now before us. The first section of this act constituted the Mayor and

Aldermen and City Physician, if there was one, of every incorporated city or town in the State a board of health for such city or town, and when there was no incorporated town or city the County Commissioners were to be the board of Health for the county. The County Commissioners were not to be the board of health for the county if there was an incorporated city or town in the county.

The act (sec. 3) authorizes any board of health to establish at any time during each year a quarantine forbidding the approach to the city or town or *district* covered by the board's jurisdiction, of any vessel upon which any contagious, infectious or pestilent disease has occurred or existed during the voyage thereto, or within thirty days preceding the arrival thereat, and forbidding the landing of any person or goods from such boat or vessel until it has performed quarantine in accordance with the provisions of this act and with the rules and regulations of the board of health. It, sec. 4, also provides that, " any board of health " may establish quarantine against any county or locality of which it has information as being infected with plague or other malignant, contagious or infectious disease, forbidding the approach to the town, city or district of any vessel or person from such infected country, and the landing of any such vessel, or of any person or goods thereon, until such vessel, person or goods shall have performed quarantine as aforesaid. The establishment of the above quarantine is required to be publicly posted or published in some newspaper for the space of two weeks (secs. 4, 5).

" The board of health of any incorporated city or town" (sec. 6.) may appoint one or more Port Inspectors, whose duty it makes to board any vessel approaching such city or town and ascertain if it is subject to perform proper quarantine under the 3d or 4th sections, and to order the same, if found to be so subject, and the persons and goods on it,

into quarantine, and immediately notify the board of the fact. Each board has power to appoint a quarantine physician to reside at and have control of the quarantine grounds (sec. 7), and by section 8, the board of any incorporated city or town may order into quarantine any boat or vessel in the vicinity of the city or town, whenever the presence of such boat or vessel, or the cargo thereof in said vicinity, will, in the opinion of the city physician, endanger the health of the inhabitants of the city or town.

If after proclamation under such 3d and 4th sections by the board of health of any city or town, any person coming in any boat or vessel approaching the city from the high seas, shall (sec. 11) himself land, or shall land any goods from the vessel, or if any person shall go on board of such vessel previous to her inspection by a port inspector, such person, should the vessel be ordered to quarantine, shall be required to perform the same quarantine, or be fined not less than $100, nor more than $500, and be imprisoned not less 20 nor more than sixty days in the county jail.

The board of health of any city or town may make such rules for the regulation of quarantine, not inconsistent with this act, as they may deem necessary. (sec. 13.)

The board of any city or town may establish (sec. 15) a land quarantine when in their judgment necessary, and are empowered to make rules or regulations to prevent or restrain any or all persons or goods coming from any city or place where any infectious or contagious disease prevails or exists from entering into *such city or town* during the existence of such quarantine; and for the purpose of such quarantine, the jurisdiction of such city or town extends to the boundaries of the county, and in case there shall be two or more cities in any county, the jurisdiction of each on the side towards another shall extend to a line midway between them.

By statute of March 11, 1881, entitled " An  act  to  pro-
vide for the appointment of Boards of Health  for  incorpo-
rated cities and towns containing  three  hundred  or  more
registered  voters," (Chap.  3312.) it  was  enacted  that  the
Governor shall  appoint  in any  incorporated  city  or  town
having 300 or more registered voters a board of  health con-
sisting of five discreet persons, not less than two of them to
be medical men of acknowledged ability and  skill,  and the
Mayor of the city and the town  and  the  chairman  of the
Board of County Commissioners are made *ex officio* members
of the board.   Such boards were given (sec. 4) full power to
act in regard to all matters pertaining to the public  health
and vital statistics, and empowered to make such rules  and
regulations as they might deem necessary " for  its  govern-
ment and the protection of the public health, abatement of
nuisances, &c., and the jurisdiction of each  board of health
shall extend to the boundaries of the county in which it is
located, and in case there be more than one such board in any
county, the jurisdiction of each shall extend to a  line  mid-
way between them," and it is provided that in all  matters
of quarantine, such boards shall have  the  same  powers  as
are conferred upon boards of health by the preceding act of
1879, it being expressly declared that the act of  1881  shall
not be construed as repealing section one of said act of 1879,
so far as it relates to cities and towns of less than 300 regis-
tered voters.

In 1883 the 17th section of the act of 1879 was amended
by chapter 3443 of our laws so as  to  permit  the  boards of
health to fix the inspector's and fumigation fees and  also to
authorize suit as well as detention of  the  vessel for the
same.

In 1885 an act, chapter 3603, entitled " An act to pro-
vide for the appointment of boards of health in and for the
several counties of the State of Florida, and  define  their

powers," was passed.    It provides that the Governor of the State shall appoint for every county in this State a board of health consisting of five discreet persons, not less than two of whom shall be physicians of skill and experience, to serve without pay, with a term of office of four years, and with power to elect annually a president, and a secretary, who is to be treasurer.    Every such board is made a corporation, with power to sue and be sued and to contract, and to acquire and dispose of real and personal property. The County Commissioners of each county are empowered to assess and levy, at the request of the board, a tax not exceeding in any year two mills on the dollar, to enable the board to meet its expenses.    The boards of health of counties separated by any lake, river, bay or estuary, shall have concurrent jurisdiction over such bodies of water, and when any board of health shall locate a quarantine station beyond the limits of the county for which it has been appointed, it shall have complete jurisdiction over such station, exclusive of the board of the county in which the station is located, provided ten days previous notice of the metes and bounds of the station be given by proclamation prior to the time that the jurisdiction is to attach.

Section 8 provides that every board of health thus created shall have "full power to act in regard to all matters pertaining to quarantine, public health, vital statistics and the abatement of nuisances, to appoint and suitably compensate a Port Inspector, and such other officers or agents as they may find necessary, who shall be subject to removal at the pleasure of the board."    It also provides a punishment by fine, not exceeding $1,000, of any person who shall interfere with, hinder or oppose any such agent or officer, or member of the board in the discharge of his duty.

Section 9 authorizes the board to establish, at any time, "such quarantines as in their judgment is expedient for the

public welfare, and provide such rules and regulations for the same as may be needful for the proper enforcement of such quarantine; and after the establishment of any quarantine against any port or place, any person violating the same shall be deemed guilty of a felony, and, upon conviction, punished by a fine of not more than $500, or by imprisonment in the State Penitentiary not more than one year." Section 10 is that every board " may adopt such rules and regulations as they may deem needful in the exercise of the powers and the discharge of the duties created and imposed by the provisions of this act; and any person who shall violate any such rule or regulation, after the same has been printed for ten days in some newspaper printed in the county, shall be punished by a fine not exceeding one thousand dollars, or imprisonment in the Penitentiary not exceeding two years;" and section 11 gives the board a remedy by injunction, and without bond, to restrain the violation of any rule or regulation for the protection of public health.

The 12th section of this act amends the first section of the above act of 1879, so as to make it read as follows: " The Mayor, Aldermen and City Physician, if there be one, of any incorporated city or town in this State, of less than three hundred registered voters, shall be and are hereby constituted a board of health for said incorporated city or town."

It is plain that the act of 1885 does not do away with boards of health for incorported *towns*—municipalities having less than three hundred registered voters—and it is also clear that there is in the act of 1885 nothing that repeals the act of 1879, except in so far as it made a board of health for such an incorporated town the board for the county. As indicated above, there was, under the act of 1879, no county board, as such, unless there was no incorporated city or

town in the county, and as to " a land quarantine," under the 15th section of that act, the jurisdiction of an incorporated city or town extended to the boundaries of the county in which it was situated, and in case there should be two or more towns in any county, the jurisdiction of each on the side towards the other extended to a line midway between them.

There are two views to be taken of the effect of the act of 1885 upon that of 1881; one is that it was intended to take the place of it and do away with the boards of health provided by it; and the other is that it was merely to create a new or county board as an additional or third board in the quarantine or health system in this State. Had the act of 1 85 not contained the 12th section, it might have been urged with force that the intention of the Legislature was to have the county boards take the place of those of both towns and cities, but in view of the provisons of such section, it is indisputable that such was not their intention, as to town boards, and we are not clear that it was their purpose as to *city* boards. It is, however, not material to settle the latter question—for whichever view is to prevail, it is plain that the general provisions of the general quarantine law of 1879 have not been repealed, but are still in force; it and the act of 1885 are *in pari materia*, and to be construed together. State *ex rel.* vs. Palmes, 23 Fla., 620.

When the act of 1885, in its ninth section, says that a board of health created under it may at any time establish such quarantines as in their judgment are expedient, it means quarantines as authorized by the act of 1879. If, in its judgment, it is well to establish a quarantine forbidding the approach to the county of any vessel or boat upon which any contageous, infectious or pestilent disease has

occurred or existed during the voyage to said county, or within thirty days next preceding the arrival of such vessel or boat at such county, it may do so, forbidding the landing of any persons or goods from such vessl or boat, until it has performed quarantine in accordance with said act and the rules and regulations of the board, at the quarantine ground established by it. This county board may also, upon information that any county is infected with plague or other malignant, contagious or infectious disease, establish quarantine against such county or locality, forbidding the approach to the county of any vessel or boat or persons from such infected county or locality, and forbidding the landing of such boats or vessels or of any persons or goods therefrom until such boat, vessel, persons or goods shall have performed quarantine. Section 4.

The sixth section of the act of 1879 informs us what is meant by the act of 1885, when by its eighth section it gives power to appoint and suitably compensate a Port Inspector. It means an officer whose duty it shall be to board every boat or vessel approaching the county and ascertain if it is subject to perform quarantine, and if she is order her and all persons and goods on her thrown into quarantine, and notify the board of health that she has been ordered into quarantine.

We thus see that the Legislature has regulated the matter of quarantining vessels to a certain extent. There has been no repeal of these provisions, and we are satisfied that in the grant of power alluded to, made by the act of 1885 to county boards, it was meant that they should exercise similar powers as to counties, or rather should conform to these regulations. In the matter of land quarantines it will be perceived that tl e Legislature has not gone into such detailed regulations. There was good reason for the course pursued as to the former feature of the subject. Its purpose was not only

to secure the communities against the arrival in their midst of a vessel herself infected, or coming from an infected county, but also by making it a feature of the system that an officer should thus board her and ascertain whether or not she was liable to quarantine, avoid subjecting her and the custom revenue system or other officials of the United States to the interruption or delay not necessary to an efficient quarantine system. The purpose and meaning of this statute is that if the vessel is not subject to quarantine she is not to be detained after it is so ascertained by the Port Inspector. The law does not contemplate that he shall detain her after finding she is not a subject of quarantine, nor did it contemplate that the business of the United States officials as to customs revenue and commerce should be further delayed than this. The fact that the statutes of the United States have enjoined an observance of State quarantine and health statutes and regulations on customs revenue and other officers, (Morgan vs. Louisiana, 118 U. S., 455, and statutes cited,) makes it none the less the duty of the States to see that such statutes and regulations are productive of no unreasonable delay. In view of our statute we do not think it was ever intended that any board of health should make a regulation authorizing a longer detention, as it has done in this case.

Under the regulation before us the vessel is to be detained and the United States officers delayed until not only the inspection has been made but also until the report and release of the vessel. If she is not liable to quarantine, any such detention of the vessel or the United States officials, is contrary to the policy of our statute, and in view of it, as well as in itself, unreasonable.

There is another feature in which we think the regulation is unauthorized. As it appears before us it is one that is intended to be in operation and effect although no quarna-

tine may have been established by the board of health. Both the act of 1879 and of 1885 show it to have been the intention of the law makers that boards of health should take affirmative action establishing quarantine. These statutes do not of themselves establish quarantine for all time and authorize rules and regulations which are to be of force and effect and obeyed, as such, whether the boards may or may not deem that there is any necessity for a quarantine, but in the language of the act of 1885, and the evident meaning of that of 1879, the boards " may at any time establish such quarantine as in their judgment is expedient for the public welfare." The authority implies the duty, and the duty to establish, when it is expedient for the public welfare, implies the corresponding one not to establish and to abrogate one already established when the public welfare does not require any. The rules and regulations authorized as to quarantine are to be in force and to be obeyed as such only in and of an existing and lawfully established quarantine.

If there is any other regulation of the board of health of Escambia county that operates as a limitation upon the one before us, it does not appear in the record, nor can we take judicial notice of its existence. Freeman vs. State, 19 Fla., 552. The proceedings taken against the plaintiff in error do not allege the establishment and existence of any quarantine, and in the absence of both an explanatory rule and the allegation mentioned, we think they are insufficient.

The result is that the judgment must be reversed, and the cause remanded with directions to discharge the plaintiff in error, and it will be so ordered.