THE STATE OF FLORIDA EX REL., THE BOARD OF PUBLIC INSTRUCTION OF VOLUSIA COUNTY, APPELLANT, VS. THE COUNTY COMMISSIONERS OF VOLUSIA COUNTY, APPLLLEES.

1. The 14th paragraph of section 20 of the school law of June 8, 1889 (Chapter 3872 of the Statutes), which provides that the school boards shall prepare itemized estimates of the amount of money required for the maintenance of the necessary common schools and state the amount in mills on the dollar of the taxable property, and the tax levy act of June 9, 1891 (Chapter 4012), providing that the County Commissioners shall levy other county taxes, and a tax for county school purposes, such tax to be estimated by the school board and submitted to the Commissioners for their approval or disapproval, who shall have the power to increase or lower, within specified limits, the estimate so made, and the 35th section of the general revenue law of June 10, 1891 (Chapter 4010), enacting that the Commissioners shall determine the amount to be raised for all county purposes, except school purposes, and enter upon their minutes the rate to be levied for each fund respectively, and shall ascertain the aggregate rate necessary to cover all such taxes, including

such rate as may have been levied by the school board, are *in pari materi*), and to be construed as one act, and the 35th section of the last named act does not deprive the Commissioners of power to lower the rate of taxation on taxable property estimated by the school board, where such reduction does not affect the amount of money fixed by such board as necessary for the schools, even if it prevents any change of such amount—a point not presented by the record.

2. A writ of mandamus will be denied where no violation of official duty is shown.

Appeal from the Circuit Court for Volusia county.

The facts of the case are stated in the opinion of the court.

*B. M. Miller* and *E. K. Foster* for Appellant.

It is contended by the Appellant:

1. That the provisions of Paragraph 14, of Section 20, of Chapter 3872, Laws of Florida, (the School Law of 1889) were not repealed by Section 2, of Chapter 4012 (the Tax Law of 1891) and that under the former act the Board of Public Instruction, at the time it made the estimate set out in the petition—July 7, 1891—and at the time of the action of the Board of County Commissioners thereon—August 4, 1891—was authorized to fix the amount required for school purposes, without any interference by, or supervision of, the Board of County Commissioners.

2. That Section 35, of Chapter 4010, Laws of Florida, (the Revenue Law of 1891) modifies the method of

JUNE TERM, 1891.　　795

State ex rel. v. County Com'rs. Volusia Co.—Argument of Counsel.

proceedings for the assessment of the amount esti-
mated by the Board of Public Instruction for school
purposes, to this extent, that it requires the Board of
County Commissioners, instead of the Board of Pub-
lic Instruction, to report to the Assessor the amount
required for such purposes, and, therefore, makes it
necessary for the Board of Public Instruction to re-
port to the Board of County Commissioners the amount
estimated by the Board of Public Instruction, and the
rate required to raise such amount.

3. That Section 35, of Chapter 4010, was in effect on
the day the Board of County Commissioners took ac-
tion upon the request of the Board of Public Instruc-
tion and directed the Assessor to assess three and
three-quarters mills for school purposes.

4. That even if said Section 35 was not in force on
said day, the action of the Board of Public Instruc-
tion was a substantial compliance with the require-
ments of Chapter 3872 ; and the Board of County
Commissioners, if they acted at all upon the request
of the former Board, should have acted in accordance
with law, and should have directed the Assessor to as-
sess the amount estimated by the Board of Public In-
struction.

Upon the first proposition we adopt the argument of
the learned Attorney-General, in his opinion of Sep-
tember 14th, 1891, upon this question. Section 2, of
Chapter 4012, provides that the Board of County Com-
missioners shall have power to increase or lower, with-

796        SUPREME COURT.

State ex rel. v. County Com'rs. Volusia Co.—Argument of Counsel.

in certain limits, the estimate made by the "County School Board." There is no such Board as the "County School Board" known in the statutes of this State. Paragraph 14, of Section 20, of Chapter 3872 is direct legislation upon the method of raising revenue for school purposes. Chapter 4012 is a general law for the levy of taxes for the years 1891 and 1892, and is simply a copy of a "Tax Law" passed by successive legislatures for many years past. If these two acts stood alone, we contend that Chapter 4012 would not repeal or modify the provisions of Chapter 3872. But Section 35 of Chapter 4010, approved subsequent to Chapter 4012, legislates directly upon the subject of taxation for school purposes. It inhibits the Board of County Commissioners from determining the amount to be raised for school purposes, and makes it the duty of that Board simply to report to the Assessor the rate levied by the Board of Public Instruction for such purposes. True, Chapter 4010 did not take effect as a law until sixty days from the adjournment of the legislature, but we contend that, as showing the intention of the legislature in reference to the levy and assessment of school taxes, it speaks from its passage, and is conclusive that it was not the intention of that body, by the provisions of Chapter 4012, to give the Board of County Commissioners any discretion or authority over such levy or assessment.

Chapter 4010 and 4012 are Acts in *pari materia*, in

so far, at least, as they tend to show the intention of the legislature, and should be construed together.

Ferrari vs. Board of Health, 24 Fla. 390.

Ex parte John O'Donavan, 24 Fla. 281, and many other cases to the same effect, decided by this Court.

Special or local law not impliedly repealed by general law. Southerland on Statutory Construction, §157.

2. Under paragraph 14, of Section 20, of Chapter 3872, the Board of Public Instruction reported directly to the Assessor the amount levied by it for school purposes, without any intervention or action by the Board of County Commissioners. It seems clear that Section 35 of Chapter 4010 modifies the provisions of that paragraph, to this extent, that the report of the rate levied and determined by the Board of Public Instruction, for school purposes, is to be made to the Assessor by the Board of County Commissioners instead of by the Board of Public Instruction, and that the Assessor gets his authority to assess from the Board of County Commissioners, and not from the Board of Public Instruction as under Chapter 3872. This, of course, renders it necessary for the Board of Public Instruction to notify the Board of County Commissioners of the amount and rate levied by it. As this court say, in Jones, Clerk, vs. *ex rel* Board of Public Instruction, 17 Fla., 411 (417), "the evident purpose of referring it to the County Commissioners was that the latter might know and enter of record

the entire amount of taxes to be collected; that they might know that the itemized statement of the School Board contained no items for other than school purposes, and that the amount did not exceed the lawful limit."

The intention of the legislature, as gathered from all the legislation above referred to, seems clearly to be, that the Board of Public Instruction shall have the exclusive authority to estimate the amount and rate required for school purposes, and that the only authority to be vested in the Board of County Commissioners, in reference thereto, is to report to the Assessor the amount and rate so estimated and levied.

3. Chapter 4010 was approved June 10, 1891, and by the constitutional provision took effect sixty days from the final adjournment of the session of the legislature of 1891. That session adjourned June 5th. We contend that August 4th, is "sixty days from the final adjournment of the legislature"—that is, sixty days from the 5th day of June. The 6th day of June is one day from the adjournment, and by computation it is evident that August 4th is sixty days from the adjournment. Applying the rule for the computation of time—excluding the day of the adjournment and including the last day, makes August 4th sixty days from the adjournment. We contend that this computation comes clearly within the rule laid down in Sav-

age vs. the State, 18 Fla., 970, and that, therefore, Chapter 4010 was in force on the 4th day of August, 1891, when the Board of County Commissioners acted upon the estimate of the School Board and directed the Assessor to assess three and three quarters mills, instead of five mills, and that under that chapter, the County Commissioners should have directed the assessment of the amount estimated by the School Board. As to the running of the sixty days, see Price vs. Whitman, 8 Cal., 412. See Sutherland on Stat. Constr., p. 111.

4. But, assuming for the purpose of the argument, that Chapter 4010 was not in force on August 4th, we still contend that the action of the School Board was, in effect, a compliance with the law as we think it then stood. While undoubtedly the strictly correct course for the School Board to pursue would have been to direct the Assessor to assess five mills, under Chapter 3872, still, their report to the County Commissioners was a notice that they had estimated an amount equal to five mills, and, in effect, a request to the County Commissioners to include in their directions to the Assessor to assess all the county taxes an order to assess five mills for school purposes. While the School Board did not pursue the exact course which the law at that time provided for, they did take means to bring to the notice of the officials interested—the Commissioners and the Assessor—the fact that they had made an estimate which required an assessment of

five mills.    When the Board of County Commissioners
undertook to act upon this notice, and to bring it to the
attention of the Assessor, they should have acted as
the law then required.    As we think we have shown,
the law at that time did not authorize them to vary the
amount of the estimate made by the School Board, and
in assuming to direct the Assessor to make assessment
for school purposes, they should have ordered him to
assess the amount estimated by the School Board.

The Assessor might have the right to complain that
he had not received proper notice, but the County
Commissioners, having acted in the matter, cannot
complain that the proper steps were not taken to in-
form the Assessor of the amount to be assessed.    The
Assessor makes no complaint, but has made the assess-
ment ordered by the County Commissioners.

The petition for mandamus was filed September 7th,
at the first meeting of the Board of County Commis-
sioners after their action of August 4th.    At that time
—September 7th—Chapter 4010 was unquestionably in
effect, and if it be true that on August 4th the provis-
ions of Chapter 3872 were in force and that the County
Commissioners had no power on that day to vary the
estimate made by the School Board, and did vary it,
then a mandamus would properly lie against them to
compel them to correct their illegal action of August

4th, and to order the Assessor to assess the five mills estimated by the School Board.

*J. D. Broome, Jr.*, for Appellees.

The position taken by the respondents below—appellees in this court—is that at the time of the levy of the taxes, to-wit: on the 4th day of August, A. D. 1891, Chapter 4012, of the Laws of the State of Florida, was in full force and effect, and all other laws in conflict thereto were by it repealed. If this be true the writ of mandamus could not lie against the respondent Board for it was a matter solely within their discretion as to whether they would levy as requested by the relator, and therefore the writ of mandamus could produce no result.

"A writ of mandamus will never be granted when it could have no effect." State *ex rel.* Bisbee, Jr., vs. Inspectors of Election, Madison Co., 17th Fla., page 26.

If Chapter 4012 was in full force and effect the County Commissioners were invested with discretionary power and a writ of mandamus could not lie against them. Section 2, Chap. 4012, Laws of Florida; State *ex rel.* Bloxham vs. Board of State Canvassers, 13th Fla., p. 55.

The law under which the relator claims its rights to the levy as set forth in the statement of the case is

51

Chapter 4010 of the Laws of Florida, and let us see whether this law was in effect or not.

The Constitution provides that all laws shall take effect sixty days after the final adjournment of the Legislature unless it is especially provided for their immediate effect. Art. 3, Sec. 18, Constitution of Florida.

The Legislature of 1891 adjourned at 12 o'clock, midnight of April 5th, and the sixty days would commence to run on the 6th day of April, if so, the sixty days would expire on the 5th day of August, and the law would go into effect upon that day. The said levy having been made on the 5th day of August, the law as above set forth could have no effect upon it.

In computing time the law is plain that you exclude the first and include the last day of the period required. Owen vs. Slater, 26 Ala., 547.

This is also the rule governing all services of process in this State. Rules of Practice, Sec. 8.

Let us now look at the intent of the Legislature in regard to Chapter 4010 of the Laws of the State of Florida. Sec. 57 of said Chapter says "that nothing in this act shall be so construed as to impair the validity of any assessment of taxes assessed prior to January, 1892, nor any proceedings had or done, or that may hereafter be had or done, by any collector for the collection of taxes assessed before that time."

This plainly shows that this law was not intended

to be applicable to the assessment and collection of taxes for this year, and if the writ could lie against the respondent board all assessments and collections which might have been made would be invalid and therefore against the law under which the relator claims its position.

"The meaning and intent of the Legislature may often be found in the contemporaneous and subsequent action of that body in reference to the subject matter." Doggett vs. Walter, *et al.*, 15th Fla., 355; Bryan Heirs vs. Dennis, *et al.*, 4th Fla., 445.

This law would be retrospective legislation if it were to apply to any levy made prior to the time of its going into effect, and would therefore be contrary to all the decisions of this court.

"A statute is never given retrospective effect unless its terms show clearly that such an effect was intended." McCarty vs. Havis & Perry, 23d Fla., 508.

Even if Chapter 4010 was in full force and effect, a writ of mandamus could not lie against the Respondent Board, for Section 35, provided that the County Board of Education shall levy the taxes required for school purposes taking from the County Commissioners the authority to make such levy their only duty being to report the same to the Assessor of Taxes. Sec. 35, Chapter 4010, Laws of Florida.

The Relators have demanded that the Respondent Board shall levy a tax which the law does not contemplate their doing, and to enforce such request this

mandamus suit was brought against them. Since, if Chapter 4010 is in full force and effect, the Respondent Board cannot make the levy as requested a writ of mandamus cannot lie against them, for they would be requiring an illegal act to be done by the Respondent.

"A mandamus will not issue to enable a person to effect an illegal purpose." State ex rel. Edwards vs. Commissioners Sumter County, 22d Fla., page 1.

"A preemptory mandamus will not be granted unless the respondents may be required by law to do all that is required by the alternative writ." State *ex rel.* Bloxham vs. Board of State Canvassers, 18th Fla., page 55.

I most respectfully contend that the decision of the lower court is well founded and should be affirmed.


RANEY, C. J.:

The petition for the writ of mandamus states that the Board of Public Instruction of Volusia county met on the last Monday in June, the 29th of that month, of the present year for the purpose of preparing an itemized statement showing the amount of money requisite for the maintenance of the necessary common schools of the county for the ensuing scholastic year, and for the purpose of making a levy therefor, and then, at the request of the Board of County Commissioners, and for the purpose of conferring with the latter board at its next meet-

ing to be held on the 7th day of July, adjourned to that day, on which day the former Board met and prepared an estimate and levy of the amount so required for the maintenance of the schools, and presented such estimates and levy to the commissioners, and requested them to levy and assess a tax of five mills upon the dollar of the taxable property of the county for the purpose aforesaid, and to report such estimate and levy to the assessor of taxes. The transcript of the record of the proceedings of the School Board on the day last named, which transcript is made a part of the petition, shows the following action: "On motion the following estimate for the current year's expenses was made:

| | |
|---|---:|
| For salary of teachers | $17,800 |
| For furniture, repairs and new buildings | 2,500 |
| For School Board and mileage | 250 |
| For Superintendent | 1,000 |
| For school books and freight | 1,800 |
| For miscellaneous expenses | 250 |
| Total | $23,650 |

And in accordance with the law the above estimate was presented to the Board of County Commissioners with the request that they levy a tax of five mills on the dollar for school purposes."

The complaint of the School Board is, that the commissioners refused to make a levy of five mills, or to

report to the Assessor of Taxes "the amount and rate of the estimate and levy" so made by the former board, but made a levy of three and three-quarter mills, which they instructed the assessor to enter upon the assessment, which instruction the assessor has obeyed. The prayer of the petition is, in effect, for a mandamus commanding the commissioners to do what it is complained they have not done.

The petition seems to have been treated as an alternative writ, which is the declaration in such cases, and was answered by the commissioners, who state that their action was taken on the 4th day of August of this year, and pursuant to the provisions of an act approved June 9th, 1891, (Chapter 4012 of the statutes,) given below. The School Board's response to this is, practically, though not in form, a demurrer, and has been so treated by the Circuit Judge.

The 14th paragraph of sec. 20 of the school law, approved June 8th, 1889, Chapter 3872 of the statutes, provides that the Board of Public Instruction in each county shall on or before the last Monday in June of each year prepare an itemized estimate showing the amount of money required for the maintenance of the necessary common schools of their county for the next ensuing scholastic year, stating the amount in mills on the dollar of the taxable property of the county, which shall not be less than three nor more than five mills, and furnish a copy of the statement to the Assessor of

Taxes of the county, and file a copy in the office of the Board of Public Instruction, and the assessor shall assess the amount so stated, and the collector shall collect the amount assessed and pay over the same monthly to the County Treasurer, to be used for the sole benefit of the public schools.

"An act to provide for the levy of taxes for the years 1891 and 1892," approved June 9th, 1891, (Chapter 4012 of the statutes,) and by its terms taking effect upon such approval, ordains that the Board of County Commissioners of every county at a meeting for correcting and reviewing the county assessment shall immediately thereafter determine the amount of money to be raised by tax for county purposes, including current expenses, interest on the bonded debts, bridges and county buildings, and to meet these expenses they are authorized to levy a tax not exceeding five mills on the dollar on real and personal property of the county, and that every such determination and levy so made shall be entered at large upon the record of the board; and it is also provided that the commissioners "shall levy a tax not to exceed five mills, nor less than three mills, on the dollar on real and personal property of the county for county school purposes, such tax to be estimated by the County School Board and submitted to the Board of County Commissioners for their approval or disapproval, and the County Commissioners shall have the power to increase or lower the estimate so made within the above limits."

The 35th section of "an act for the assessment and collection of revenue," approved June 10th, 1891, (Chapter 4010 of the statutes, which act did not go into effect "until sixty days from the final adjournment of the session of the Legislature," (sec. 18, Article III of the Constitution,) which adjournment took place on the fifth day of the same month, provides that the County Commissioners shall determine the amount to be raised for all county purposes, except for school purposes, and shall enter upon their minutes the rate to be levied for each fund respectively, and shall ascertain the aggregate rate necessary to cover all such taxes, including such rate as may have been levied by the County Board of Education for school purposes, and report the same to the assessor who shall carry out the full amount of taxes for all county purposes under one heading in the assessment roll to be provided for that purpose, and the County Commissioners shall notify the clerk and auditor of the county, also the treasurer thereof, of the amount to be apportioned to the different accounts out of the total taxes levied for all purposes.

Respondents rely, as indicated above, on the act of June 9th of the present year, (Chapter 4012,) and relators contend that this statute was modified by the 35th section of the general revenue law, (Chapter 4010,) approved June 10th, which they say was in effect on the fourth day of August when the commissioners took the action complained of. Respondents further urge that as the Legislature did not adjourn until the fifth

day of June, the last mentioned statute did not go into effect until August 5th, or the day after the levy by the commissioners.

To ascertain the real intention and meaning of the Legislature of 1889, we must consider any legislation there may be, of that year, bearing on the same subject that the fourteenth paragraph of the 20th section of the school law of that year relates to. In "an act to provide for the levy of taxes for the years 1889 and 1890," approved June 3rd, 1889, (Chapter 3849,) the County Commissioners are given powers as to other taxes than those for school purposes, similar to those given by the tax levy act of 1891,(Chapter 4012, *supra*,) and as to school taxes it was enacted that the County Commissioners should " levy a tax not to exceed five mills, nor less than three mills, on the dollar on the real and personal property of the county for county school purposes, such tax to be estimated by the County School Board and submitted to the Board of County Commissioners for their approval or disapproval; and the County Commissioners shall have power to increase or lower the estimate so made within the above limits."

The above provisions as to school taxes in the two acts of 1889 are *in pari materia*, and they are to be construed together, the same as if they were in one statute. See authorities, *infra*. Considering them together, there is not only no irreconcilability between them, but no obscurity as to their meaning, or as to the purpose of the law-makers. The meaning and pur-

810            SUPREME COURT.

State ex rel. v. County Com'rs. Volusia Co.—Opinion of Court.

pose were that the School Board should, as directed by
the school act, on or before the last Monday in June
prepare the itemized statement of the amount required
for the maintenance of schools, stating also the amount
in mills on the dollar of the taxable property, but this
estimate was, by the tax levy act of the same year,
rendered subject to the approval or disapproval of the
commissioners, and to be increased or lowered by them.
The duty devolved by the latter act upon the School
Board, of submitting the estimate to the County Com-
missioners, was to be performed, as was the revising
duty of the commissioners under the same act, before
the School Board could or should perform the other
duties devolved upon it by the subsequent provisions
of the given fourteenth paragraph of section 20 of the
school law.

Such being the effect of the law and the purpose of
the legislature, as shown by the legislation of 1889,
the disposition of the case *presented by this record*
is not difficult.   Assuming that the thirty-fifth section
of the general revenue law of 1891, (Chapter 4010,
*supra*), was in force on the fourth day of August of
this year, there is in it nothing inconsistent with the
power of the County Commissioners to reduce the
*rate of taxation* on taxable property estimated and
submitted, under the tax levy act of 1891, (Chapter
4012, *supra*).   Even if it be that the effect of the
thirty-fifth section in excepting school taxes from the
direction of the Commissioners to "determine the
amount to be raised for all county purposes," is to

limit the revisory powers which the Commissioners would have if the school law of 1889 and the tax levy act of 1891 stood alone, by preventing any interference with the determination or discretion of the school board as to the amount of money requisite for the necessary common schools, it has not the effect to take from the Commissioners the power to increase or lower the rate of taxation. This is clearly the effect of the latter act notwithstanding anything in the "thirty-fifth section." The tax levy act makes it the duty of the school board to submit "the tax estimated by" it to the Commissioners for their approval or disapproval, and the County Commissioners have power to increase or lower the estimate so made, within specified limits. Whether, in view of the exception, by the thirty-fifth section, of school taxes from the duty of the County Commissioners as to determining the amount to be raised for county purposes, the submission for approval or disapproval to be made by the School Board of "the tax estimated" by them, and the power of the Commissioners to increase or lower the estimate so made, include the "amount of money required for the maintenance of the common schools," we do not feel called upon to decide, but we are entirely satisfied that they do include the rate of taxation which the School Board are required by the act of 1889 to state. When this thirty-fifth section says that the County Commissioners shall determine the amount to be raised for all county purposes, it means it shall do so in accordance with the provisions of the tax levy act of

1891, or, in other words, shall perform the duty as to
such taxes imposed by that act, and in excepting
school taxes from such duty of determining the
amount to be raised for county purposes, its purpose
was not more than to avoid any conflict with the pro-
visions of the 14th paragraph of the 20th section of the
school law, as to the duties and powers of the School
Board in the matter of "preparing an itemized esti-
mate showing the amount of money required for the
maintenance of the necessary common schools for the
next ensuing scholastic year," and when it says that
the Commissioners shall ascertain the "aggregate rate
necessary to cover all such taxes, including such rate
as may have been levied by the County Board of Edu-
cation for school purposes," the words "including
such rate as may have been levied by the County
Board of Education for school purposes," are not
used as granting power to the County School Board,
but as words of reference or of description of the tax,
and they refer at least to the rate fixed for school pur-
poses in accordance with law, that is, by the School
Board under the supervisory power of the County
Commissioners. In determining how the rate of tax-
ation for county school purposes is to be fixed, we
have no more right to ignore the provisions of the tax
levy act of 1891 requiring that the County Commis-
sioners shall "levy" the tax, and that it shall be a tax
previously estimated by the School Board, and sub-
mitted to them by it for their approval or disapproval,
with power in the Commissioners to increase or lower

the tax or estimate so made and submitted, than we have to close our eyes to the provision of the school law as to the School Board preparing the itemized estimate of the amount required with the statement of the amount in mills. If it be that the 35th section of the general revenue law was not in force, and for that or other reason is not applicable to taxes of the present year, then the effect of the tax levy act of this year upon the provisions of the school law discussed above is the same, at least in so far as the rate of taxation is concerned, as was the tax levy act of 1889. Of course if the 35th section is not applicable to these proceedings, there was no law making it the duty of the County Commissioners to make the "report" to the Assessor of Taxes, provided by such section, or interfering with the provision of the fourteenth para-

grapy of the 20th section of the school law, (as modified by the tax levy act of 1891,) as to the School Board furnishing a copy of the statement to the Assessor.

Assuming that the power of the County Commissioners extends only to altering the rate of taxation, the petition does not show that they have acted either illegally or improperly in lowering the estimate, or even that the rate of taxation fixed by them will not produce an amount of money equal to the aggregate of the itemized statement. No *prima facie* case is made by the petition, no omission or violation of duty. High on Ex. Legal Rem., secs. 449, 450. The "meet-

814                    SUPREME COURT.

ing" of the County Commissioners "for correcting and reviewing the county assessment," mentioned in the tax levy act of 1889, as well as that of 1891, (Chapters 3849 and 4012, *supra,*) is the meeting provided for by the general revenue law, and the day fixed for its commencement by such law as it stood in either 1889, or in 1891, was not earlier than the first Monday in July, (see Chapters 3681, 3839 and 4010 of the statutes,) even if it can be said that the last of these chapters could have had any effect at that time. Of course any estimate of the rate of taxation made by the School Board on the last Monday in June must, in view of the powers of the Commissioners as to altering valuations of property at their subsequent meeting, necessarily be of doubtful accuracy, even assuming that the Assessor was so well up with his assessments or books as to inform the School Board of the aggregate of his valuation of the taxable property in the county.

The fact that the general revenue law was approved by the Governor one day after the approval of the tax levy act, does not make the former statute work a repeal of any part of the latter, or prevent their being construed as one act. The former passed the Senate June 4th, and the House of Representatives the next day, and the latter passed both houses on the latter day. They are, by their nature, *in pari materia,* and should be so construed. Florida, A. & G. C. R. R. Co. v. Pensacola & Georgia R. R. Co., 10 Fla., 145; State *ex rel.* Arpen vs. Frown, 19 Fla., 563, 593-5;

State *ex rel.* Gonzalez vs. Palmes, 23 Fla., 620; 3 South. Rep., 171; *Ex parte* O'Donovan, 24 Fla., 281, 4 South. Rep., 789; Forbes vs. Board of Health of Escambia County, 27 Fla., 189; 9 South. Rep., 446; Attorney-General vs. Railroad Co's., 35 Wis., 425.

The judgment is affirmed.